**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **ACE AMERICAN INSURANCE COMPANY, et al.,** | |
| **Plaintiffs,** | |
| **vs.** | **Civil Action No. 4:07-Cv-02796** |
| **HUNTSMAN CORPORATION and INTERNATIONAL RISK INSURANCE COMPANY,** | |
| **Defendants.** | |

---

**DEFENDANT HUNTSMAN CORPORATION'S REPLY TO PLAINTIFF
REINSURERS' RESPONSE IN OPPOSITION TO HUNTSMAN CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

## TABLE OF AUTHORITIES

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ............................................................................................. 5

I.   The Facts Alleged by Reinsurers Are Insufficient to Plead Either of Their
     Alternative Claims for Relief................................................................ 5

     A.   The Reinsurers' Opposition Papers Rest Upon Grossly Distorted
          Allegations About How Captive Insurance Companies and
          Reinsurers Interact and How Such Obligations Are Determined ............. 5

     B.   Even if True, Reinsurers' Allegations Are Insufficient to Disregard
          Contract Provisions.................................................................... 10

II.  Reinsurers' Demand to Compel Arbitration Should Be Denied........................ 13

     A.   Reinsurers Have Put Forward No Facts Suggesting that Huntsman
          Should Be Bound as a Non-Signatory ...................................... 13

     B.   An Individual Analysis of Each Legal Theory Pled by the
          Reinsurers Demonstrates Their Lack of Adequacy ................................ 14

          1.   The Reinsurers Do Not Demonstrate Sufficient Facts to
               Plead Estoppel............................................................. 14

          2.   The Reinsurers Do Not Demonstrate Sufficient Facts to
               Plead Under a Veil Piercing Theory ............................................. 16

          3.   The Reinsurers Do Not Demonstrate  Sufficient Facts to
               Plead an Agency Relationship ................................................. 17

          4.   The Reinsurers Do Not Demonstrate Sufficient Facts to
               Plead Under a Third-Party Beneficiary Theory ........................... 18

III. Reinsurers' Declaratory Judgment Claim Should Be Dismissed ....................... 20

     A.   The Reinsurers Demonstrate No Facts Establishing the Requisite
          Contractual Privity or a Justiciable Controversy Between
          Huntsman and the Reinsurers ................................................. 20

     B.   The Jefferson County Action Is Where the Coverage
          Determination Should Be Made and Reinsurers Have a Full
          Opportunity to Protect Themselves in that Action ................................. 21

CONCLUSION............................................................................................... 22

# TABLE OF AUTHORITIES
(continued)

Page

## FEDERAL CASES

*ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455 (10th Cir. 1995)..............................16

*Allstate Insurance Co. v. Administratia Asigurarilor de Stat*, 948 F. Supp. 285 (S.D.N.Y. 1996) ....................................................................................................................20

*Bailey v. City of Ridgeland*, No.3:05-CV-266BS, 2006 U.S. Dist. LEXIS 41227 (S.D. Miss. June 2, 2006) .........................................................................................18

*Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003) .................15, 16

*Citizens Casualty Co. of New York v. America Glass Co.*, 166 F.2d 91 (7th Cir. 1948)..............12

*Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*, Civ. 4023(DLC), 2007 WL 1862162 (S.D.N.Y. June 29, 2007)..............................................................................20

*Greggs v. Hillman Distributing Co.*, 719 F. Supp. 552 (S.D. Tex. 1989) .....................................19

*HD Brous & Co. v. Mrzyglocki*, No.03Civ8385(CSH), 2004 WL 376555 (S.D.N.Y. Feb. 26, 2004) ......................................................................................................19

*Houston Casualty Co. v. Lexington Insurance Co.*, No. H-05-1804, 2006 U.S. Dist. LEXIS 45027 (S.D. Tex. June 15, 2006) ....................................................................6

*Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527 (2d Cir. 1975) ........................................................................................................16

*JP Morgan Chase & Co. v. Conegie ex rel Lee*, 492 F.3d 596 (5th Cir. 2007)..............................19

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58 (2d Cir. 2001) ......................................................................................................14

*In re Petition of the Board of Directors of Hopewell International Insurance Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999) .........................................................................6

*SAT Int'l. Corp. v. Great White Fleet*, No. 03Civ7481(KNF), 2006 WL 661042 (S.D.N.Y. Mar. 16, 2004)..............................................................................................16

*Sec. Benefit Life Ins. Co. v. Fed. Deposit Ins. Corp.*, 804 F. Supp. 217 (D. Kan. 1992)...............20

*Tellium, Inc. v. Corning Inc.*, No. 03Civ8487(NRB), 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) ................................................................................................16, 18

*Wood v. PenTex Resources*, 458 F. Supp. 2d 355 (S.D. Tex. 2006)..............................................15

## TABLE OF AUTHORITIES
(continued)

**Page**

*World Omni Financial Corp. v. Ace Capital Re Inc.*, 64 F. App'x 809 (2d Cir. 2003)...........15, 16

## STATE CASES

*Appalachian Insurance Co. v. General Electric Co.*, 8 N.Y.3d 162 (2007)....................................6

*Fontenot v. Marquette Casualty Co.*, 247 So. 2d 572 (La. 1971)............................................10, 20

*Koken v. Reliance Insurance Co.*, 846 A.2d 167 (Pa. Commw. Ct. 2004)...................................20

*Lucas v. Tex. Industrial, Inc.*, 696 S.W.2d 372 (Tex. 1984)........................................................17

*Rapid Transit Const. Co. v. City of New York*, 259 N.Y. 472 (1932)..........................................17

*Union Central Life Insurance Co. v. Lowe*, 349 Ill. 464 (1932).................................................12

## FOREIGN CASES

*CGU Internationall Insurance Plc. v. AstraZeneca Insurance Co.*, [2005] EWHC 2755
(Q.B.D.) (U.K.) ........................................................................................................................6

*Enterprise Oil Ltd. v. Strand Insurance Co.*, [2006] EWHC 58 (Q.B.D.) (U.K.) ..........................7

## STATUTES

Fed. R. Civ. P. 12(b)(6).....................................................................................................................5

IRC Section 831(b) ..........................................................................................................................6

Tex. Bus. Corp. Act § 2.21(A)(2) (Vernon 1997) ...................................................................16, 17

Tex. Bus. Orgs. Code Ann. § 21.223(a)(2) (Vernon 2003) ...........................................................16

## MISCELLANEOUS

Jay D. Adkisson, *Captive Insurance Companies: An Introduction to Captives, Closely-*
*Held Insurance Companies, and Risk Retention Groups* (2006)..........................................6

1A Couch on Insurance § 9:29 (3d. ed. 2003) ...........................................................................8, 21

Restatement (Second) of Judgments § 57 (1982) .....................................................................8, 21

Restatement (Third) of Agency § 2.03 (2005).................................................................................18

## PRELIMINARY STATEMENT

The Reinsurers' opposition ("Opp.") to Huntsman's motion to dismiss grossly distorts the factual reality regarding captive insurance companies and ignores the following undisputed documentary evidence:

- The two contracts at issue – the Huntsman/IRIC Policy and the IRIC/Reinsurer Certificates – provide separate rights and obligations by and among Huntsman and IRIC, and IRIC and the Reinsurers, respectively.

- The Huntsman/IRIC Policy contains a forum selection clause that gives Huntsman the right to litigate claims for insurance coverage under the Huntsman/IRIC Policy in the court of its choosing with the law of that jurisdiction to apply.

- The IRIC/Reinsurer Certificates, which Huntsman is not a party to, provide that disputes between IRIC and the Reinsurers under the IRIC/Reinsurer Certificates are subject to arbitration.

- The IRIC/Reinsurer Certificates further provide that the "Reinsurers agree to follow all terms, clauses, conditions, alterations, amendments and agreements as agreed per the [Huntsman/IRIC Policy]," which includes the choice of forum provision allowing Huntsman to choose the court in which to litigate its insurance coverage claims under the Huntsman/IRIC Policy.

- The IRIC/Reinsurer Certificates also provide the Reinsurers with the right to be actively involved in the resolution of Huntsman's claims and to "associate with" IRIC in the investigation and defense of a claim or loss under the Huntsman/IRIC Policy that may affect the IRIC/Reinsurer Certificates.

- Given that IRIC is a captive insurance company – that is, it is wholly owned by Huntsman for the express purpose of providing insurance to Huntsman – the Huntsman/IRIC Policy provides for the appointment of an independent adjuster (Integra) to adjust Huntsman's claims for insurance coverage.  The Huntsman/IRIC Policy also provides for a loss adjuster to be used "in cooperation with the Reinsurers of this policy."

In response, the Reinsurers have put forth a flurry of factual allegations that are largely irrelevant and some of which actually support Huntsman's request for a dismissal.  Even assuming the facts alleged by the Reinsurers to be true for purposes of this motion to dismiss (some are not true and others are raised for the first time in the Reinsurers' opposition papers), however, nothing that the Reinsurers claim that Huntsman and IRIC have done (or failed to do) in connection with the adjustment of Huntsman's claim for coverage is in any way inconsistent with the contracts at issue or the manner in which Huntsman or IRIC is supposed to act in adjusting a loss under the Huntsman/IRIC Policy.  Despite the hyperbole in Reinsurers' allegations, Reinsurers allege no actual <u>facts</u> that would justify ignoring the explicit choice of forum provision in the Huntsman/IRIC Policy, which was one of the provisions that Reinsurers explicitly agreed to follow in the IRIC/Reinsurer Certificates.

Indeed, the Reinsurers' voluminous exhibits and newly-asserted facts (which are inappropriate in response to a motion to dismiss) reveal that:

- At the time the contracts were entered, all parties, including the Reinsurers, were aware that IRIC was a captive insurance company wholly owned by Huntsman that was organized for the purpose of providing insurance coverage to Huntsman.  Accordingly, the Reinsurers' claim that IRIC is a "shell" corporation is

meaningless; its relationship to Huntsman and status were fully known to Reinsurers when they entered into the reinsurance agreements.

- There is no allegation that the Reinsurers' contractual right to protect their interests in connection with a coverage dispute between Huntsman and IRIC by associating with IRIC in connection with any claim has been interfered with by Huntsman or IRIC.

- The Reinsurers concede that they have stepped in to the adjustment process and "essentially fulfilled IRIC's obligations to Huntsman." (Opp. 30.)

- Immediately after the fire loss, the Reinsurers voluntarily assumed the adjustment of this claim by directing and controlling the appointed claims adjuster (Integra) under the Huntsman/IRIC Policy.  Having directed the adjustment of Huntsman's claim under the provisions of the Huntsman/IRIC Policy, the Reinsurers do not get to pick and choose which provisions they want to apply (and ignore) under the Huntsman/IRIC Policy.

- Consistent with the terms and conditions of the Huntsman/IRIC Policy and the IRIC/Reinsurer Certificates, IRIC allowed the Reinsurers to direct and control Integra in the adjustment of Huntsman's claim for insurance coverage under the Huntsman/IRIC Policy and the affidavit of Ewan Cresswell ("Cresswell Aff.") explicitly affirms that IRIC did not assert any coverage positions or provide any coverage evaluations independent of Integra.  Thus, IRIC's actions were entirely consistent with the terms and conditions of the Huntsman/IRIC Policy and IRIC/Reinsurer Certificates and do not support the allegation that IRIC colluded in any way with Huntsman.

- There are no allegations that at any time during the adjustment process the Reinsurers or Integra suggested that IRIC had done or was doing anything that was inconsistent with its obligations or that the manner in which the adjustment was being conducted would vary any of the terms and conditions of the Huntsman/IRIC Policy.  In fact, during the entire claims adjustment process Integra has taken the exact opposite position; it has repeatedly affirmed to Huntsman that "the Reinsurers' ongoing investigation and adjustment of these matters through Integra or otherwise is not intended to and does not change the nature and scope of coverage or the terms, exclusions, or conditions of the policy or applicable reinsurance agreements, all such rights being expressly reserved. . ." (Integra letters to Huntsman, App. to Opp. 0039-0040; *see also id*. at 0012-0013.)

Tellingly, the Reinsurers provide no legal authority to disregard the plain language of the choice of forum provision in the Huntsman/IRIC Policy and to allow their extraordinary and unprecedented claims for relief to proceed.  In fact, a review of the case law the Reinsurers cite in support for their novel claims reveals that the claims as plead are simply insufficient to provide a basis for the Reinsurers to state a claim to compel Huntsman to arbitrate its claims for insurance coverage.  In particular, the Reinsurers' conclusory allegations of direct benefits estoppel are insufficient because the Reinsurers' allegations support the fact that Huntsman was seeking to exercise it rights under and benefit from its contract with IRIC, not the IRIC/Reinsurer Certificates to which it was not a party.  Moreover, the Reinsurers' remaining allegations that are made to support ignoring the choice of forum provision in the Huntsman/IRIC Policy fail to adequately plead claims for veil piercing, agency, and third party beneficiary (a legal theory they do not even assert in the Complaint).

Finally, the Reinsurers plead no facts establishing the requisite contractual privity or a justiciable controversy between Huntsman and the Reinsurers entitling the Reinsurers to sue Huntsman. The IRIC/Reinsurer Certificates provide the Reinsurers with no rights against Huntsman, much less provide an explicit right allowing the Reinsurers to compel Huntsman to litigate in a court of the Reinsurers' choosing as opposed to a court of Huntsman's choosing as provided for in the Huntsman/IRIC Policy. The bizarre nature of the Reinsurers' declaratory judgment claim against Huntsman is highlighted by the fact that it involves a request for a coverage determination by this Court under the terms and conditions of the Huntsman/IRIC Policy, while apparently asserting that the choice of forum provision contained in that very same contract should be flatly disregarded.

Pursuant to Fed. R. Civ. P. 12(b)(6), the Reinsurers' claims against Huntsman must be dismissed in their entirety.

## ARGUMENT

I. **The Facts Alleged by Reinsurers Are Insufficient to Plead Either of their Alternative Claims for Relief**

    A.    The Reinsurers' Opposition Papers Rest Upon Grossly Distorted Allegations About How Captive Insurance Companies and Reinsurers Interact and How Such Obligations Are Determined

As discussed in Huntsman's opening brief, a captive insurance company is owned by its insured and is created for the express purpose of insuring its owner. The thrust of Reinsurers' response is that IRIC, and by implication other captive insurers, "merely function[ ] as [] 'pass through' or shell corporation[s]," and thus should be ignored for all intents and purposes when evaluating their bargained-for rights under the relevant contracts. (Opp. 5; *see also id.* at 11, 14, 17, 23.) However, as the Reinsurers know well, captive insurance is not a new or novel idea. Captive insurance companies, such as IRIC, have a long tradition of use both in the United States

and internationally. Reinsurers underwrite policies issued by captive insurance companies with a clear understanding of the nature and purpose of captive insurance companies. In fact, the captive industry has seen immense growth in the last decade, and from 1980 to 2006, the number of captives increased from around 1,000 to over 5,000. Jay D. Adkisson, *Captive Insurance Companies: An Introduction to Captives, Closely-Held Insurance Companies, and Risk Retention Groups* xiii (2006). It is estimated that captive insurance companies now account for over 10% of all commercial insurance premiums collected in the world and are responsible for over $9 billion in premiums in the U.S. alone. *Id.* As such, courts routinely recognize the entirely legitimate role that captives have in providing insurance to their owners.[1] *See, e.g., Appalachian Ins. Co. v. Gen. Elec. Co.*, 8 N.Y.3d 162, 167 (2007) (discussing partially captive insurer who had provided insurance to its parent company from the 1950s to the 1990s); *In re Petition of the Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 32-33 (Bankr. S.D.N.Y. 1999); *Houston Cas. Co. v. Lexington Ins. Co.*, No. H-05-1804, 2006 U.S. Dist. LEXIS 45027, at *2 n.2 (S.D. Tex. June 15, 2006).

As captive insurers have become increasingly significant players in the insurance market, it is not unprecedented, either domestically or internationally, for captives to be involved in conflicts with their insureds. *See, e.g., In re Hopewell*, 238 B.R. at 33 (noting litigation between insured and captive insurer)[2]; *CGU Int'l Ins.Plc. v. AstraZeneca Ins. Co.*, [2005] EWHC 2755

---

[1]        Using a captive insurer often has several advantages over self-insurance or placing the insurance with a non-affiliated commercial insurer. These can include beneficial tax consequences, reduction in risk management costs, price stabilization, customization, provision of coverage where it is unavailable conventionally, and control over the investment of premiums. Karin Landry, *Captives: Why or Why Not?* (2005), available at http://www.captive.com/service/SCG/ProsAndCons.html. Often captive insurers are used to gain access to the reinsurance market, because of the greater flexibility that can be provided on account of the lesser regulatory conditions and lower markup costs. *See* Adkisson, *supra*, at 7-8 (2006). Using a captive insurer often has advantageous tax consequences under, for instance, IRC Section 831(b).

[2]        It is notable that the *Hopewell* litigation involved members of the Zelle law firm, one of the counsel representing the Reinsurers in this case.

(Q.B.D.) (U.K.) (analyzing issue relating to captive insurer settlement with underlying insured and corresponding payment from reinsurers); *Enter. Oil Ltd. v. Strand Ins. Co.*, [2006] EWHC 58 (Q.B.D.) (U.K.) (underlying insured sought indemnity from captive; reinsurers use control clause in reinsurance contract to step in and dispute claim).

One issue that can arise in the context of certain captive insurance relationships is how a captive insurance company who is reinsured for liabilities under its policy with the insured should evaluate and handle a claim for coverage from its insured given the fact that the insured owns the captive insurer.  Because of that relationship, the reinsurer may question any coverage determination unless some mechanism is in place ensuring that the coverage determination is made in good faith.  *See* Adam Fleischer, *The Captive Quandary and the Duty of Utmost Good Faith*, *in* 15 No. 14 Mealey's Litig. Rep. Reinsurance 11 (Nov. 11, 2004) (recognizing similar interests of captive and underlying insured may create difficulties for claims adjustment and describing ways this type of situation is handled).  A typical way to proceed with such claims is to designate an independent administrator to evaluate the coverage claim.  *Id.*  Here, the Huntsman/IRIC Policy provides that upon a loss, Huntsman and IRIC will designate "loss adjusters to be used – in co-operation with Reinsurers of this policy."  (Huntsman/IRIC Policy, Def. Huntsman's Mot. to Dismiss Ex. A-2 ¶52.)  In accordance with the terms of the Huntsman/IRIC Policy, IRIC (with Huntsman) appointed a loss adjuster (Integra) and IRIC allowed Integra, the adjuster, to adjust the claim in "co-operation with the Reinsurers."  (*Id.*)[3]

---

[3]     Although Ewan Cresswell states in his affidavit that John Roberts of AIG (one of the Reinsurers) called Integra on April 30, 2006 "to notify me [Cresswell] of the retention," the Declaration of Lee Skidmore ("Skidmore Decl."), Chairman, President and a director of IRIC, places Mr. Cresswell's statement in proper context. In fact, before John Roberts called Integra, Mr. Skidmore called John Roberts's supervisor and explained to him that Huntsman and IRIC would like to appoint Integra to adjust Huntsman's claim for the loss arising out of the April 29, 2006 fire. (Skidmore Decl. ¶ 8.)  It should be noted that the items raised in the Cresswell Aff. and the Skidmore Decl. are not in conflict and that even if the Court considers the allegations put forth by Mr. Cresswell as true, Huntsman's motion to dismiss still should be granted.

The IRIC/Reinsurer Certificates also provide a mechanism for additional protection to the Reinsurers if Huntsman exercises its contractual rights to litigate its coverage claims under the Huntsman/IRIC Policy against IRIC – the Reinsurers can "associate with" IRIC in the investigation and defense of a claim or loss under the Huntsman/IRIC Policy that may affect the IRIC/Reinsurer Certificates.  (IRIC/Reinsurer Certificates, Compl. Ex. 1 § C(6)(2).)  The Reinsurers have put forward no allegation that IRIC did not honor that provision.  In fact, IRIC actually tendered the claim to Reinsurers.  The tender of the defense by IRIC to the Reinsurers of the Jefferson County Coverage Action is compelling evidence that the Jefferson County Coverage Action is not collusive in nature.  That tender offer, which would enable the Reinsurers to fully and completely assert any coverage positions under the Huntsman/IRIC Policy that they have articulated throughout the adjustment process, conclusively establishes that IRIC is not colluding with Huntsman.  To date, although they have assumed the direction and control of the adjustment process, the Reinsurers have declined to accept IRIC's tender in the Jefferson County Coverage Action (Skidmore Decl. ¶ 7), and have provided no good faith reason for their refusal.  Such a decision to refuse the tender will bind the Reinsurers to the result in that case:  "If the original insured sues the original insurer and the reinsurer is notified and refuses or neglects to participate in the defense, the reinsurer is bound by the judgment against the original insurer, and will be liable for the reasonable and necessary expenses and costs incurred in such defense."  1A Couch on Insurance § 9:29, 9-77 (3d. ed. 2003); *see also* Restatement (Second) of Judgments § 57 (1982) (when a party has an obligation to indemnify another for a loss "and an action is brought by the injured person against the indemnitee and the indemnitor is given reasonable notice of the action and an opportunity to assume or participate in its defense, a judgment for the

injured person...[means the] indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person").

Rather than deal with the legitimate and contractually-specified role of both Huntsman and IRIC in this adjustment process, the Reinsurers assert that they should be able – in the forum of their choice – to either arbitrate or litigate Huntsman's claims for coverage because the relationship between Huntsman and IRIC is somehow collusive in nature. (Opp. 9.)  There is simply no basis for that accusation.  To the contrary, the affidavit Ewan Cresswell of Integra, the appointed adjuster controlled by the Reinsurers, makes clear that at no time during the adjustment process did IRIC adopt *any* coverage position, much less the coverage position of Huntsman. (Cresswell Aff., App. to Opp. 00001, ¶7.)  Moreover, Reinsurers point to no evidence that IRIC did anything to make the adjustment of the coverage claims anything less than completely independent of improper influence by Huntsman and IRIC.

Based upon the allegations in the Complaint, the terms and conditions of the Huntsman/IRIC Policy and the statements made by Integra's representative, Ewan Creswell, submitted with the Reinsurers' response, there is no dispute that Huntsman and IRIC followed the procedures set forth in the Huntsman/IRIC Policy designed to adjust the policy in good faith and that Huntsman and IRIC appointed a loss adjuster to be used "in co-operation with the Reinsurers of this policy." (Huntsman/IRIC Policy, Def. Huntsman's Mot. to Dismiss Ex. A-2 ¶52.)  The affidavit of Ewan Cresswell makes clear that the Reinsurers began to step in and handle the claim one day after the fire loss. (Cresswell Aff., App. to Opp. 00001, ¶6.)[4]  As the Reinsurers recognize: "[b]y dealing with and ultimately paying claims directly to Huntsman,

_____

[4]     In fact, Integra, acting at the direction of the Reinsurers, went so far as to fill out the proofs of loss for Huntsman in connection with this claim.  As the affidavit of Ewan Cresswell notes, "Integra prepared the POL's [proofs of loss] and submitted them for Huntsman's signature." (*Id.* at ¶14.)

Reinsurers have essentially fulfilled IRIC's obligations to Huntsman." (Opp. 30.) After stepping in to "IRIC's obligations" to evaluate coverage under the Huntsman/IRIC Policy for over a year and a half, the Reinsurers cannot now pick and choose what provisions they decide to accept and those they decide to ignore. Indeed, the Reinsurers concede "that 'when the reinsurer by his actions and relations with the original insured directly assumes the insurer's responsibility and liability,' the insured may enforce his insurer's policy against reinsurers despite lack of privity." (Opp. 29 (emphasis added) (*citing Fontenot v. Marquette Cas. Co.*, 247 So. 2d 572, 576 (La. 1971)).) The point is that under these circumstances, the terms and conditions of the insured's policy controls and not the reinsurance certificates.

B.      Even if True, Reinsurers' Allegations Are Insufficient to Disregard Contract
        Provisions

It is telling that the Reinsurers have put forward no cases or other authority supporting their unprecedented claims that request that this Court, in effect, ignore significant portions of the Huntsman/IRIC Policy. Of course, this is not surprising, given the plain language of the contracts here and the accepted and established nature of captive insurance companies. Instead of pointing to any particular contractual language or case law supporting their theories, the Reinsurers cobble together a number of irrelevant and inaccurate allegations of the conduct of Huntsman and IRIC throughout the adjustment claim as a basis to ignore the relevant contractual provisions.

To be sure, the Reinsurers do not come forward with any allegations that, placed in context, support their requests for relief. For example:

- Some of the Reinsurers' allegations are plainly irrelevant for purposes of this motion:

  "that Huntsman [sic] is a captive insurance carrier, wholly owned and controlled by Huntsman; that Huntsman created

IRIC for the purpose of obtaining insurance through the
international market." (Opp. 11.)

- Some of the Reinsurers' allegations are specifically
contemplated by the terms and conditions of the
Huntsman/IRIC Policy (§ 52, a loss adjuster is to be used "in
co-operation with Reinsurers of this policy") and the
IRIC/Reinsurer Certificates (§ C(7); the Reinsurers may pay
Huntsman's directly "at the request of" IRIC):

> "that Huntsman deals directly with Reinsurers; that
> Huntsman has made numerous demands on Reinsurers; that
> Reinsurers have made interim payments to Huntsman . . .
> that IRIC has routinely failed to participate in meetings
> between Huntsman and Reinsurers concerning disputed
> coverage and quantum issues." (Opp. 11.)

- Some of the Reinsurers' allegations are just plainly conclusory,
are without any factual support, and should not be
countenanced by this Court:

> "that IRIC functions as a 'pass through' or shell
> corporation . . . that IRIC has adopted Huntsman's
> coverage positions . . . that Huntsman has assumed the
> duties and responsibilities of IRIC under the Certificates;
> that IRIC is Huntsman's agent; and that Huntsman has
> sought to receive and has received direct benefits from the
> Certificates . . . that IRIC has ceded all authority to
> Huntsman."  (*Id.*)

In short, when analyzed correctly and viewed in connection with the actual terms and

conditions of the contracts at issue, these facts do not serve to alter the basic terms of the

contracts and compel Huntsman to participate in any arbitration or to litigate its insurance

coverage claims with the Reinsurers in this Court.  First, the Reinsurers do not (and cannot)

dispute that the Huntsman/IRIC Policy contains a forum selection clause that provides "in the

event of the failure of [IRIC] to pay any amount claimed to be due" under the Policy, IRIC at the

request of Huntsman "will submit to the jurisdiction of any court of competent jurisdiction

within the United States . . ." (Huntsman/IRIC Policy, Def. Huntsman's Mot. to Dismiss Ex. A-

2 ¶44.)  Such a provision is particularly notable, where, as here, the Reinsurers do not (and

cannot) dispute that they had the opportunity to negotiate terms and conditions of the Huntsman/IRIC Policy and, of course, the IRIC/Reinsurer Certificates[5] (including the relevant dispute resolution provisions), or, in the alternative, refuse to sign a contract of reinsurance in the first instance. Indeed, if the Reinsurers had wanted disputes under the Huntsman/IRIC Policy to be resolved through arbitration – with the participation of the Reinsurers – they could have requested such a provision.

Second, the Reinsurers do not (and cannot) dispute that, through the IRIC/Reinsurer Certificates, the Reinsurers explicitly agreed that they are "to follow liabilities" under the Huntsman/IRIC Policy "in all respects." Determining the Reinsurers' obligations under the IRIC/Reinsurers Certificates is a distinctly different inquiry than the determination of insurance coverage under the Huntsman/IRIC Policy itself. *See, e.g., Citizens Cas. Co. of New York v. Am. Glass Co.*, 166 F.2d 91, 94-95 (7th Cir. 1948) ("Reinsurance is defined to be a contract that one insurer makes with another to protect the first insurer from a risk it has already assumed. The contract of insurance and that of reinsurance remain totally distinct and unconnected." (*quoting Union Cent. Life Ins. Co. v. Lowe*, 349 Ill. 464, 469 (1932))). This point is further reinforced by the fact that "disputes" under the IRIC/Reinsurer Certificates are to be arbitrated by an industry professional "with not less than ten years experience of international insurance or reinsurance business as persons engaged in such business or advising such business in a professional capacity." (Compl. Ex. 1 § C(13)(2).)

Finally, by its terms, the scope of the dispute clause under the IRIC/Reinsurer Certificates does not include the determination of coverage under the Huntsman/IRIC Policy. The IRIC/Reinsurer Certificates specifically describe the type of disputes that will be arbitrated as

---

[5]     In fact, the IRIC/Reinsurer Certificates are standard forms used by reinsurers generally.

those disputes "between [IRIC and the Reinsurers] arising out of or in connection with this Agreement including formation and validity whether arising during or after the period of this Agreement . . ." (*Id.* at § C(13)(1).)

## II.      Reinsurers' Demand to Compel Arbitration Should Be Denied

### A.      Reinsurers Have Put Forward No Facts Suggesting that Huntsman Should Be Bound as a Non-Signatory[6]

The legal theories asserted by the Reinsurers encouraging the Court to ignore the forum selection clause in the Huntsman/IRIC Policy simply are inapplicable because the Reinsurers point to no facts that were unknown to the Reinsurers at the time they entered into the IRIC/Reinsurer Certificates.  Indeed, they do not dispute that they entered into the IRIC/Reinsurer Certificates with full knowledge that IRIC was a captive insurance company wholly owned by Huntsman.  (Compl. ¶¶ 26, 27, 29.)  Further, the Reinsurers put forward no allegations suggesting that when the Reinsurers agreed to reinsure the liabilities of IRIC and follow the terms and conditions of the Huntsman/IRIC Policy – including Huntsman's right to litigate its claims for insurance coverage in a court of Huntsman's choice – IRIC's true identity was somehow hidden from the Reinsurers.  In fact, the Reinsurers do not (and cannot) make any serious allegation that IRIC should have participated in the adjustment of the claim or that Huntsman or IRIC violated the terms of the Huntsman/IRIC Policy based on IRIC's lack of participation in the adjustment process.  This is because the Huntsman/IRIC Policy does not provide for any substantive involvement in the adjustment of a claim by IRIC other than the work to be done by the designated adjuster.  And for good reason – any serious attempt by IRIC to control the evaluation or determination of Huntsman's claim may be subject to attack by the

---

[6]      The Reinsurers' references to the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Opp. 12-13) are inapplicable here because the documentary evidence reveals that Huntsman is a non-signatory to the contract containing the arbitration clause and the dispute at issue is not within the scope of the arbitration clause. (*See supra* pp. 12-13)

Reinsurers as collusive or illegitimate based on IRIC's inability to independently adjust a claim and the fact that IRIC is owned by Huntsman.

> B.    An Individual Analysis of Each Legal Theory Pled by the Reinsurers Demonstrates Their Lack of Adequacy

As discussed above, it is axiomatic that this Court should not disregard the particular contractual provisions based on facts known to the Reinsurers at the time they entered into the contracts. (*See supra* pp. 10-13.)  In addition, an examination of each of the Reinsurers' specific legal theories – estoppel, veil piercing, agency, and the newly-asserted claim that Huntsman is a third party beneficiary – demonstrates their inapplicability here.

> 1.    The Reinsurers Do Not Demonstrate Sufficient Facts to Plead Estoppel

Despite spending over five pages attempting to justify their claims for estoppel, the Reinsurers fail to cite any case in which an insured was bound to its insurer's arbitration agreement with a reinsurer when the insured had not first initiated suit seeking to recover on the reinsurance agreement.  As the Reinsurers concede, direct benefits estoppel only binds non-signatories when they "knowingly exploit[] and receive[] a direct benefit under the agreement containing the arbitration clause."  (Opp. 15 (*citing MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 62 (2d Cir. 2001)).)  This is clearly not the case here, as the only contract Huntsman has sought a benefit on is its insurance contract with IRIC.  Accordingly, the Reinsurers' blanket statement that Huntsman has "consistently and knowingly exploited the terms of the Certificates and ultimately demanded and received direct benefit from them" (Opp. 16) simply goes beyond a fair reading of the undisputed facts.  Not only has Huntsman never claimed to be a party to the IRIC/Reinsurer Certificates, but it has never sought any direct benefit from them.  To the contrary, it is the Reinsurers who, by their own admission, have

stepped in to the adjustment process and "essentially fulfilled IRIC's obligations to Huntsman." (Opp. 30.)

The cases relied upon by the Reinsurers in support of their theory of estoppel are misplaced. Although the Reinsurers point to this Court's decision in *Wood v. PenTex Resources*, 458 F. Supp. 2d 355 (S.D. Tex. 2006) for the unsurprising point that conduct during the course of contract performance is an important element of estoppel (Opp. 17), nothing in Huntsman's conduct, alleged or otherwise, has indicated a knowing exploitation of and direct benefit received from the IRIC/Reinsurer Certificates. And certainly nothing about Huntsman's conduct amounts to what is necessary to overcome the warning in *Wood* that "courts must be extraordinarily cautious in allowing a contracting party to reach out to enforce an arbitration clause in [a] contract against a nonparty, particularly if the nonparty has not himself sued the party." 458 F. Supp. 2d at 372.[7] *See also Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003) (direct benefits estoppel only used when "nonsignatory had brought suit against a signatory premised in part upon the agreement").

Moreover, *World Omni Fin. Corp. v. Ace Capital Re Inc.*, 64 F. App'x 809 (2d Cir. 2003) is inapposite because the underlying insured initiated the suit in question, sued both insuring and reinsuring entities, and alleged breaches of the reinsurance contacts. *Id.* at 813. To be sure, Huntsman has not initiated the present suit and it has only sued IRIC in the Jefferson County Coverage Action solely under the terms of the Huntsman/IRIC Policy. In addition, *World Omni* confirms that in order to enforce a dispute resolution clause the dispute at issue must fall within

---

[7]     Contrary to the Reinsurers' statement that "Huntsman cannot claim that it has not directly sought and received benefits under the Certificates" (Opp. 17), Huntsman can and does make such a claim; more importantly, *the allegations made by Reinsurers* do not support this contention.

that clause, *id.* at 812, which is not the case here.  (*See supra* pp. 12-13.)  In short, Huntsman

cannot be forced to arbitrate under a theory of estoppel given the allegations in this case.

2. The Reinsurers Do Not Demonstrate
Sufficient Facts to Plead Under a Veil Piercing Theory

Reinsurers' contention that Huntsman is bound to arbitrate through the doctrine of alter

ego/veil piercing is incorrect both legally and factually.  At the outset, it is a given that corporate

form should be respected.  Where, as here, Defendants observed corporate formalities and took

steps to retain their separate identities, there is no cause to treat them as alter egos or collapse

different corporations into one entity.  Certainly nothing that has been alleged is sufficient to

overcome the strong presumption that the corporate form should be respected.  *See Bridas*

*S.A.P.I.C.*, 345 F.3d at 359 ("Courts do not lightly pierce the corporate veil even in deference to

the strong policy favoring arbitration." (*quoting ARW Exploration Corp. v. Aguirre*, 45 F.3d

1455, 1461 (10th Cir. 1995))).

Although the Reinsurers engage in a misleading analysis of whether the appropriate

analysis of piercing the corporate veil is a conjunctive or disjunctive test (Opp. 20),[8] it is of no

moment because Reinsurers have insufficiently alleged both prongs of the test.  First, with

respect to the "domination" prong, the only allegation made by Reinsurers that is of possible

relevance to this test is that "Huntsman and IRIC are run by common officers and are located at

---

[8]     Reinsurers concede that "later cases," in the Second and Fifth Circuits, i.e. more persuasive, controlling authority, have found that piercing the corporate veil to compel arbitration against a non-signatory requires both a showing of complete control over the signatory *and* a showing of fraud.  (*Id.*)  *SAT Int'l. Corp. v. Great White Fleet*, No. 03Civ7481(KNF), 2006 WL 661042, at *14 (S.D.N.Y. Mar. 16, 2004) was specifically decided under New York state law, concerns personal jurisdiction, and found no domination.  *Tellium, Inc. v. Corning Inc.*, No. 03Civ8487(NRB), 2004 WL 307238, at *7 (S.D.N.Y. Feb. 13, 2004) also found no domination and by no means said or implied fraud would not have been an additional requirement had domination been found.  Indeed, the primary citation found in *Tellium, Inc.* on the alter ego subject is to a case that found that a showing of fraudulent or wrongful behavior is a "sine qua non to holding a non-signatory bound by an arbitration agreement."  *Interocean Shipping Co. v. Nat'l Shipping and Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975).  Further, under Texas law, even more than just fraud is required – veil piercing for contractual obligations is limited to instances of "actual fraud on the obligee primarily for the direct personal benefit of the" shareholder or parent.  Tex. Bus. Orgs. Code Ann. § 21.223(a)(2) (Vernon 2003); Tex. Bus. Corp. Act § 2.21(A)(2) (Vernon 1997).

the same address." (*Id.* at 23.)  By itself, this is a common feature of corporate families and is

clearly insufficient to meet this test.  *See Rapid Transit Const. Co. v. City of New York*, 259 N.Y.

472, 488 (1932) ("Some, perhaps all, of its corporate officers are the same persons who occupy

similar offices in the parent company; but it maintains its own organization and has an

independent life.").[9]

Second, the Reinsurers' allegations of the "fraud or wrong" purportedly done by

Huntsman fare no better.  Simply put, there is no legitimate basis to claim that Huntsman has

engaged in any wrongful or fraudulent activity.  Reinsurers point to the allegations that

Huntsman "dealt with the Reinsurers directly," and "move[d] for dismissal of the instant action"

without any case citations or analysis as to how these actions constitute fraud. (Opp. 24.)  Any

allegation of fraud is belied by the notion that until the filing of this action and during the entire

course of the adjustment of the claim, Reinsurers never contended that Huntsman was behaving

in a wrongful way.  This *post hoc* contention that the Reinsurers "had no way of knowing that

the parent company of the subsidiary with whom it [sic] contracted would completely ignore the

corporate form of the subsidiary" (Opp. 21 n.17), is just plain wrong and not even alleged in the

Complaint.  But even assuming this allegation is true, it is contradicted by the Reinsurers' own

actions and statements during the course of the adjustment of this claim.

> 3.    The Reinsurers Do Not Demonstrate
>        Sufficient Facts to Plead an Agency Relationship

The entirety of Reinsurers' argument that Huntsman is bound to the arbitration agreement

contained in the IRIC/Reinsurer Certificates under the theory of agency is that: "IRIC is the

---

[9]         *See also Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 376 (Tex. 1984) ("In fact, the established law
indicates that the blending of activities alone cannot suffice to treat two corporations as one.  '[C]ourts will not
because of stock ownership or interlocking directorship disregard the separate legal identities of corporations, unless
such relationship is used to defeat public convenience, justify wrongs, ... protect fraud, or defend crime.'") (citation
omitted).

agent for Huntsman and Huntsman is IRIC's principal." (Opp. 24.)  Reinsurers do not allege that

on entering their agreement with IRIC, they reasonably believed IRIC had the authority to bind

Huntsman, nor that any such belief would be traceable to Huntsman's manifestations of authority.

Both would be necessary under the doctrine of apparent authority, Restatement (Third) of

Agency § 2.03 (2005), which one must suppose is the theory Reinsurers seek to advance because

(in addition to not pleading sufficient facts) they do not actually say.

Instead, they cite two cases where agency was specifically found to be lacking,

apparently to bolster the broad and incontestable idea that, *when the proper facts are alleged*, a

non-signatory can be bound to an agreement entered by an agent.  The lack of merit to their

argument is especially apparent where, as here, the IRIC/Reinsurer Certificates specifically state:

"This Agreement is solely between the Reinsured and the Reinsurer," thus disclaiming any

authority to bind Huntsman.  (IRIC/Reinsurer Certificates, Compl. Ex.1 § C(3)(1).)  As an

agency case cited by Reinsurers phrases it, "[w]here an agreement specifically precludes the

creation of an agency relationship, courts will not create one." *Tellium, Inc. v. Corning Inc.*,

No.03Civ8487(NRB), 2004 WL 307238, at *6 (S.D.N.Y. Feb. 13, 2004).

> 4.    The Reinsurers Do Not Demonstrate Sufficient
>        Facts to Plead Under a Third-Party Beneficiary Theory

The Reinsurers allege that Huntsman is bound to the arbitration provision in the

IRIC/Reinsurer Certificates "under the principles and theories of assumption, agency, alter ego,

and/or estoppel." (Compl. ¶40.)  In their opposition to the present motion to dismiss, however,

the Reinsurers conspicuously include an entire section of brief insisting that they have

"sufficiently stated claims under the theory of third-party beneficiary" to compel Huntsman to

arbitrate. (Opp. 25-26.)  As a preliminary matter, this new legal theory should be rejected

because the Reinsurers do not plead it in their Complaint. *See Bailey v. City of Ridgeland*,

No.3:05-CV-266BS, 2006 U.S. Dist. LEXIS 41227, at *8-9 (S.D. Miss. June 2, 2006) ("Because Plaintiff failed to plead [this] claim [found for the first time in his Response] and has not moved the Court for leave to amend his Complaint, he is now barred from raising this claim."); *see also id.* at *10-11; *Greggs v. Hillman Distrib. Co.*, 719 F. Supp. 552, 555 (S.D. Tex. 1989).

In support of their newly-added theory, the Reinsurers cite sections 7 and 10 of the IRIC/Reinsurer Certificates (Opp. 25), which acknowledge the existence of the "original insured" and provide for certain procedures in recognition of the fact that the policy is one of reinsurance. They also cite Attachment D as providing a benefit to Huntsman. (*Id.*) None of these un-plead "allegations," however, makes Huntsman a "beneficiary" in the sense necessary to overcome the "presumption that parties are contracting only for themselves." *JP Morgan Chase & Co. v. Conegie ex rel Lee*, 492 F.3d 596, 600 (5th Cir. 2007). Indeed, the language from the IRIC/Reinsurer Certificates in the cited sections make clear that IRIC is the beneficiary under the agreement.[10] Even if these provisions were read as providing for a potential benefit to Huntsman as an underlying insured, Huntsman has not attempted to derive direct benefits from these aspects of the agreement, as required by Reinsurers' cited cases for this theory to apply.[11] *See HD Brous & Co. v. Mrzyglocki*, No.03Civ8385(CSH), 2004 WL 376555, at *8 (S.D.N.Y. Feb. 26, 2004); *JP Morgan Chase*, 492 F.3d at 600.

---

[10]    The Reinsurers cite Section 7 of the IRIC/Reinsurer Certificates, which provides for the possibility of the Reinsurers directly transmitting loss payments to the underlying insured, as evidence that Huntsman is a beneficiary. (Opp. 25.) However, this provision is *explicitly* limited to occurring "upon request by the Reinsured." (Compl. Ex. 1 § 7.) The clause goes on to say that the "Loss Payee shall have no rights under this reinsurance, nor shall the Loss Payee be allowed to bring suit under any circumstance against the Reinsurer on this agreement." (*Id.*) This makes clear that at the time the contract was executed, the intention of the parties was to *not* include Huntsman as a third-party beneficiary.

[11]    Reinsurers' theory that Huntsman's simple recitation of Attachment D in its motion papers (Opp. 17) is somehow an acknowledgement that it is a third-party beneficiary is incorrect. Pointing out the mere fact that the IRIC/Reinsurer Certificates require Reinsurers to "submit to a United States court" at the request of the reinsured or the underlying insured (Def. Huntsman's Mot. to Dismiss 10) hardly represents an attempt to derive "direct benefits" from the Certificates.

### III.     Reinsurers' Declaratory Judgment Claim Should Be Dismissed

      A.      The Reinsurers Demonstrate No Facts Establishing the Requisite Contractual
              Privity or a Justiciable Controversy Between Huntsman and the Reinsurers

As discussed above (*supra* note 10), the IRIC/Reinsurer Certificates provide the

Reinsurers with no rights against Huntsman.  More particularly, the IRIC/Reinsurer Certificates

provide no explicit right allowing the Reinsurers to compel Huntsman to litigate in a court of the

Reinsurers' choosing.  Indeed, the Reinsurers' requested relief highlights the duplicitous nature

of their requests.  The Reinsurers have requested a coverage determination by this Court under

the terms and conditions of the Huntsman/IRIC Policy.  Having done this, however, the

Reinsurers cannot now assert that the choice of forum provision contained in that very same

contract should be flatly disregarded.

In support of their overreaching request, the Reinsurers cite several cases where, despite

the usual rule that underlying insureds cannot collect on their insurance policies against their

insurer's reinsurance companies, conduct by reinsurers results in courts allowing direct actions

by insureds against reinsurers.  (Opp. 28-29 (*citing Allstate Ins. Co. v. Administratia Asigurarilor

de Stat*, 948 F. Supp. 285, 307 (S.D.N.Y. 1996), *Sec. Benefit Life Ins. Co. v. Fed. Deposit Ins.

Corp.*, 804 F. Supp. 217, 226 (D. Kan. 1992), *Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*,

No. 06 Civ. 4023(DLC), 2007 WL 1862162, at *8 n.9 (S.D.N.Y. June 29, 2007), *Koken v.

Reliance Ins. Co.*, 846 A.2d 167, 171 (Pa. Commw. Ct. 2004), *Fontenot v. Marquette Cas. Co.*,

247 So. 2d 572, 576 (La. 1971)).)  Huntsman agrees that in certain circumstances, *i.e.,* where

reinsurers deal directly with an insured, an insured may sue the reinsurer.  However, those cases

do not at all provide the basis for a reinsurer to sue an insured directly, especially given the

undisputed facts present in this case.  Indeed, none of the cited cases involve a reinsurer suing

the underlying insured, nor do any cases exist that Huntsman is aware of that support such a

proposition in a case involving the facts present here. Such a result is not surprising given this would essentially create one-way privity relationships – allowing reinsurers essentially to bootstrap their own conduct into creating privity where it would otherwise not exist.

      B.      The Jefferson County Action Is Where the Coverage Determination Should Be Made and Reinsurers Have a Full Opportunity to Protect Themselves in that Action

Reinsurers allege that the Jefferson County Coverage Action lacks sufficient disparate "interests" between Huntsman and IRIC. (Opp. 32-34.) What this analysis ignores is that IRIC has tendered a full defense of the claims to Reinsurers, which is the precise remedy to provide the Reinsurers with the appropriate protection. (*See* Bernsen Oct 3, 2007 Letter to Reinsurers, App. to Opp. 00154-00170.) Under basic indemnity principles, whenever a party is sued and the potential loss from that suit is indemnified by another party, indemnitors are afforded the opportunity to associate with their indemnitees, who often tender a full defense to the indemnitor. It then becomes the decision of the indemnitor whether to step in and defend the legal interests of the indemnitee, or else refrain from defending and take the risk that the indemnitee is found liable to an injured party. And, as discussed above, it is black letter law that if the reinsurer is notified and refuses or neglects to participate in the defense of an action between the original insured and insurer, "the reinsurer is bound by the judgment against the original insurer." 1A Couch on Insurance § 9:29, 9-77 (3d. ed. 2003); *see also* Restatement (Second) of Judgments § 57 (1982). (*See supra* pp. 8-9.)

In addition, the Reinsurers' claim that the Jefferson County Coverage Action "is an improper suit between nonadversaries" (Opp. 27) is disingenuous. Here, the plain language of the documents provide Huntsman with the right to litigate coverage disputes against IRIC under the Huntsman/IRIC Policy in the forum of its choosing. The IRIC/Reinsurer Certificates do not provide otherwise. Moreover, it was the Reinsurers' decision to deny IRIC's tender that has

resulted in a situation in which the Reinsurers are not able assert the coverage positions and defenses that they developed and articulated throughout the adjustment process.

## CONCLUSION

For the foregoing reasons, and the reason contained in Huntsman's opening memorandum, Huntsman requests that this Court grant its motion to dismiss.

Respectfully submitted this 9th day of November, 2007.

By: _____
Gilbert I. Low, Attorney in Charge
TSB No. 12619000
Southern District Bar No. 6808
D. Allan Jones
TSB No. 10868500
Southern District Bar No. 23202

Of Counsel:

Thomas H. Sear
Howard F. Sidman
Jennifer Del Medico

Jones Day
222 East 41st Street
New York, New York 10017
212-326-3939 – phone
212-755-7306 – fax

ORGAIN, BELL & TUCKER, LLP
470 Orleans, 4th Floor
P.O. Box 1751
Beaumont, Texas  77704-1751
409-838-6412 – phone
409-838-6959 – fax

ATTORNEYS FOR DEFENDANT
HUNTSMAN CORPORATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply to Plaintiff Reinsurers' Response in Opposition to Huntsman Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), in its entirety, has been served upon all counsel of record herein on this 9th day of November, 2007.

_____
Gilbert I. Low [or] D. Allan Jones